By the Court.
On Aug. 11, 1866, defendant issued to C., a married woman, a policy for $5,000 on the life of A., her husband. It was for her benefit, and payable to her, “her executors, administrators or assigns.” In case of her death before that of A., the insurance was payable to their children for their use, or to their guardian if under age.” Upon a surrender of the policy, after two annual premiums had been paid she would be entitled to a paid up policy for two twentieths of the sum originally insured. C. died intestate in October, 1866, leaving no children. A. survived her, and paid the annual premiums until 1875, when he offered to surrender the policy and demanded a paid up policy. This was refused, and he sued the company in his •own name. One half of each premium had been paid in -cash and for the other half promissory notes payable twelve *275 months after date were given. Five of these were still owned and held by the company. For the payment of these notes the policy was pledged. The policy was of the kind entitled to dividend credits. Five dividends had been credited by the company on the last five premiums. A. claimed dividends for the first four years of the policy, but did not aver that there had been any omission by the company to declare any dividend to which the policy was entitled.
The'only evidence supporting his claim was a circular of the company’s secretary, dated Dec. 15,1878, and mailed to one E., who had no connection with C. or A. It contained the following paragraph:
“ The reason of the above action is, that the experience of this company, and the experience of other companies, older, carefully managed, and successful, has demonstrated the impracticability of sustaining a yearly dividend of fifty per cent, upon life, and forty per cent, upon endowment policies, such as this company has sustained during the past six years, and which it is the last of all the companies to abandon. Aside from the impracticability of continuing the dividend at this rate, the system of large dividends deferred in payment for several years, coupled with a system of credits or notes in payment of premiums, has proved cumbersome and expensive, defeating thereby the very object intended, viz: the reduction of the cost of insurance, and, as a consequence, rendering the results unsatisfactory. The effect of continuing the dividend of the company upon the plan heretofore pursued would, in a few years, have been more apparent, and would have rendered a change of the most arbitrary nature immediately necessary, while the difficulty of making it would have been greatly augmented and the ability of the company to co-operate with the insured greatly impaired.”
The charter was in evidence, and showed that the directors were, by by-laws and resolutions, to regulate dividends. The by-laws and minutes were not offered or called for. The secretary testified that the dividends declared in favor of C.’s policy were made in the fifth and subsequent years, *276 and were all applied in payment of the dividends for said years. The court excluded his further statement that under the rules of the company no policy holder was entitled, to a dividend until after four annual premiums had been paid. The decree allowed to A. a paid up policy and also a dividend for each of the first four years.
jWeld, 1. As C. died before the second premium was paid, her administrator had no right to a paid up policy.
2. The company having for eight years after C.’s death, treated A. as the beneficiary of the policy, it is estopped to deny his right to sue in his own name as such beneficiary.
8. The circular was not evidence that any dividend payable on C’s policy had been declared.
4. Under the issue the policy was entitled only to dividends declared by the directors as payable upon it.

Judgment reversed and decree of Common Pleas modified.